Filed 7/18/14  P. v. Harper CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E059104 |
| v. | (Super.Ct.No. RIF098762) |
| JAMES MONROE HARPER, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Becky Dugan, Judge.  Reversed.

Paul E. Zellerbach, District Attorney, and Emily R. Hanks, Deputy District Attorney, for Plaintiff and Appellant.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Respondent.

This is an appeal by the People following the trial court's order granting defendant and respondent James Monroe Harper's petition to recall sentence under the Three

1

Strikes Reform Act of 2012, added by Proposition 36 (as approved by voters, Gen. Elec. (Nov. 6, 2012)) (the Reform Act). (Pen. Code, § 1170.126.)[1] On appeal, the People contend that the trial court erred in finding defendant eligible for resentencing under the Reform Act because during the commission of the offense, defendant "intended to cause great bodily injury to another person." For the reasons explained *post*, we will reverse the trial court's order granting defendant's petition to recall and for resentencing as a second strike offender under the Reform Act.

I

FACTUAL AND PROCEDURAL BACKGROUND[2]

In late June and early July 2001, the victim and defendant were boyfriend and girlfriend. Since about the second week of their relationship, she lived with him at his sister's Riverside townhouse and was with him "[e]very day" and "[e]very night." During that time, they were sexually intimate.

On July 30, 2001, defendant was not at home when the victim returned from school, so she went to a friend's house and paged him. He picked her up and took her home. They started arguing. Defendant slapped her face with his open hand and hit her face with his fist. He asked her to leave and she did, slamming the door behind her. He followed, threw her down and started choking her. She had difficulty breathing and was

---

[1] All future statutory references are to the Penal Code, unless otherwise stated.

[2] The factual background is taken from this court's nonpublished opinion affirming defendant's current convictions (see *People v. Harper* (Sept. 8, 2003, E032433)) as well as the probation officer's report.

2

unable to push him off. He got up, but kicked her face. The phone rang and he went upstairs to answer it. She tried to go upstairs to the bathroom, but he pushed her, causing her to fall. He again started choking her.

During the first choking incident, defendant placed his hands on the victim's throat, pushed her trachea with his thumbs, and said, "'Bitch, I'll kill you.'" During the second choking incident, defendant forced the victim to the ground by her throat, pinned her to the floor, held her against a toilet, and stated, "'I told you bitch, I'll kill you with no second thought about it.'" Defendant also asserted, "'The only reason I don't kill you is my kids are here.'"

The doorbell rang and defendant's sister and children entered. The victim left, but defendant followed her outside, yelling that she was a "bitch" and he could "smash" her. She asked him to leave her alone, but he punched her jaw with a closed fist. When he left, she used a neighbor's cordless phone to call the police.

Officer Payne arrived and the victim described the foregoing events, but gave a fictitious name and her family's address. Several days later, when she learned officers had called her family, she explained she had used a fictitious name because she did not want defendant to know she had called. Although she could have called the police and explained earlier, that was her "last priority at the time." She "still had to situate [her] living, because at the time [she] was, like [she] explained, living at that apartment. So [she] had to make arrangements as far as living." Her main concern was "[w]here [she] was living, . . ."

Officer Payne testified the victim flagged him down as he was responding to investigate a reported battery. She had multiple bruises to her face, arms and neck and appeared very fearful. She said her boyfriend, James Harper, had beaten her and he was somewhere in the complex looking for her. She said "she slammed the door to the house where they reside, that he believed that she broke the window, and he confronted her about it." She gave a fictitious name and a Moreno Valley address when Officer Payne asked for an address where she could be contacted.

On July 22, 2002, a jury convicted defendant of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)) and corporal injury resulting in traumatic condition upon cohabitant (§ 273.5, subd. (a)). The trial court found true that defendant had sustained three prior strike convictions (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)) and sentenced him to concurrent terms of 25 years to life.

On November 6, 2012, the electorate passed Proposition 36. Among other things, this ballot measure enacted section 1170.126, which permits persons currently serving an indeterminate life term under the three strikes law to file a petition in the sentencing court seeking to be resentenced to a determinate term as a second striker. (§ 1170.126, subd. (f).) If the trial court determines, in its discretion, that the defendant meets the criteria of section 1170.126, subdivision (e), the court may resentence the defendant. (§ 1170.126, subds. (f), (g).)

Section 1170.126, subdivision (e), provides, as pertinent here, that a defendant is eligible for resentencing if he or she "is serving an indeterminate term of life

4

imprisonment imposed pursuant to paragraph (2) of subdivision (e) of section 667 or subdivision (c) of section 1170.12 for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of [s]ection 667.5 or subdivision (c) of [s]ection 1192.7." (§ 1170.126, subd. (e)(1).)

On December 6, 2012, defendant filed a petition for resentencing under section 1170.126. The People opposed the petition on the ground that defendant was statutorily ineligible under the Reform Act. The People argued that defendant was ineligible because during the commitment offense he "intended to cause great bodily injury to another person"; section 667, subdivision (e)(2)(C)(iii), does not require a great bodily injury enhancement; the prosecution did not have to plead and prove defendant intended to cause great bodily injury to another person; and defendant posed a risk to public safety.

The trial court heard the petition on June 7, 2013. Following argument from the parties, the trial court granted the petition, finding defendant eligible for resentencing under section 1170.126. The court explained: "I am finding that I cannot find on what the jury convicted [defendant] of that he intended to cause great bodily injury. I cannot determine that. . . . I would have to determine from the probation report, which isn't a jury finding, and I would have to determine from the appellate opinion, which isn't a jury finding, and I don't think the appellate opinion found that. The opinion of course didn't even address that because this wasn't the issue for the Court of [A]ppeal."

The trial court also found by a preponderance of the evidence that defendant did not pose a dangerous risk to public safety. The court thereafter resentenced defendant to

5

the upper term of four years, doubled to eight years due to the prior strike offenses for assault by means of force likely to produce great bodily injury, and stayed the eight-year sentence for corporal injury to a cohabitant.[3] Defendant was awarded a total of 4,386 days of custody credit and ordered to report to either postrelease community service or parole.

The People timely filed an appeal on July 9, 2013.[4]

II

DISCUSSION

The People argue that defendant was statutorily ineligible under the plain language of the Reform Act because the record clearly shows defendant intended to cause great bodily injury to another person during the commission of his commitment offense. (§ 667, subd. (e)(2)(C)(iii).) The People also assert that the provisions of section

---

[3] We note that the trial court mistakenly stated the eight-year term for corporal injury to a cohabitant is "stricken pursuant to 654."

[4] The appealability of the denial of a section 1170.126 petition is currently being considered by the Supreme Court. (See, e.g., *Teal v. Superior Court* (2013) 217 Cal.App.4th 308, review granted July 31, 2013, S211708 [court held it was not appealable]; *People v. Hurtado* (2013) 216 Cal.App.4th 941, review granted July 31, 2013, S212017 [court held it was appealable].) Even if we were to conclude it was a nonappealable order, we could, in the interest of judicial economy and because of uncertainty in the law, treat the People's appeal as a petition for writ of habeas corpus or petition for writ of mandate. (See *People v. Segura* (2008) 44 Cal.4th 921, 928, fn. 4 [treating appeal from nonappealable order as petition for writ of habeas corpus]; *Drum v. Superior Court* (2006) 139 Cal.App.4th 845, 852-853 [Fourth Dist., Div. Two] [treating appeal as petition for writ of mandate due to uncertainty in the law].) In any event, we will review the People's appeal.

6

1170.126 do not contain a pleading and proof requirement to render defendant ineligible to petition for resentencing.

A.      *Principles of Statutory Interpretation*

Statutory interpretation is a question of law.  (*Reno v. Baird* (1998) 18 Cal.4th 640, 660.)  Consequently, appellate courts apply their independent judgment when interpreting a legislative act.  (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699.)

"Thus, the first step in statutory construction is to examine the statutory language and give it a plain and commonsense meaning."  (*People v. Verduzco* (2012) 210 Cal.App.4th 1406, 1414.)  In other words, "We must give the statutory provisions at issue a reasonable and common sense interpretation, consistent with the apparent purpose and intention of the Legislature.  If possible, we will give significance to the plain meaning of every word, phrase, and sentence of a statute in pursuance of the legislative purpose, harmonizing the various parts of an enactment by considering each particular clause or section in the context of the statutory framework as a whole.  In this process, we must take into account the context, object, and history of the legislation, as well as public policy and contemporaneous construction in our attempt to arrive at a construction that is practical rather than technical in nature.  [Citations.]"  (*In re Rochelle B.* (1996) 49 Cal.App.4th 1212, 1216; see also *People v. Zambia* (2011) 51 Cal.4th 965, 972.)

"If the meaning of the statute remains unclear after examination of both the statute's plain language and its legislative history, then we proceed to the third and final

7

step of the interpretive process.  We apply 'reason, practicality, and common sense to the language at hand.'  [Citation.]  The words of the statute should be interpreted 'to make them workable and reasonable.'  [Citation.]" (*People v. Verduzco*, *supra*, 210 Cal.App.4th at p. 1414.)

B.    *The Reform Act*

In approving the Reform Act, the voters found and declared that its purpose was to prevent the early release of dangerous criminals and relieve prison overcrowding by allowing low-risk, nonviolent inmates serving life sentences for petty crimes, such as shoplifting and simple drug possession, to receive twice the normal sentence instead of a life sentence.  (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of Prop. 36, § 1, subds. (3), (4) & (5), p. 105; see Historical and Statutory Notes, 49 West's Ann. Pen. Code (2014 supp.) foll. § 667, pp. 40-41.)[5]  The electorate also approved a mandate that the Reform Act be liberally construed to effectuate the protection of the health, safety, and welfare of the People of California.  (Voter Information Guide, *supra*, text of Prop. 36, § 7, p. 110.)  Accordingly, we liberally construe the provisions of the Reform Act in order to effectuate its foregoing purposes.

The Reform Act amended the three strikes statutes (§§ 667, 1170.12) to require that before a defendant may be sentenced to an indeterminate life term in prison under the three strikes law, the new felony (the commitment offense) must generally qualify as a

---

[5]  We take judicial notice of the Official Voter Information Guide for the California General Election of November 6, 2012, pages 48-53 and pages 105-110, relating to the Reform Act.  (See Evid. Code, §§ 452 & 459.)

serious or violent felony. (§§ 667, subd. (e)(2)(A), (C), 1170.12, subd. (c)(2)(A), (C).) An exception to this general rule exists, among others, where the prosecution has pled and proved the defendant used a firearm in the commission of the current offense, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another. (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).) If the prosecution *pleads and proves* this exception exists, the defendant must be sentenced under the three strikes law. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168.) There is no dispute here that sections 667 and 1170.12 explicitly reserved life sentences for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor.

The Reform Act also created a postconviction release proceeding by adding section 1170.126. Section 1170.126 applies exclusively to those "persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of [s]ection 667 or paragraph (2) of subdivision (c) of [s]ection 1170.12, whose sentence under this act would not have been an indeterminate life sentence." (§ 1170.126, subd. (a).) Under section 1170.126, "a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety." (*People v. Yearwood*, *supra*, 213 Cal.App.4th at p. 168.)

9

Defendant's current commitment felony offenses of assault by means of force likely to produce great bodily injury and corporal injury to a cohabitant are not serious or violent felonies under section 667.5, subdivision (c), or section 1192.7, subdivision (c). However, the inquiry does not end with whether or not the current conviction is a serious or violent felony. As previously noted, an inmate is eligible for such resentencing if none of his or her commitment offenses constitute serious or violent felonies *and none of the enumerated factors* disqualifying a defendant for resentencing under the Reform Act apply. (§ 1170.126, subd. (e).)

Section 1170.126 provides, as pertinent here, that a defendant is eligible for resentencing if "[t]he inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of [s]ection 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of [s]ection 1170.12." (§ 1170.126, subd. (e)(2).) Intending to cause great bodily injury to another person during the commission of a current offense is listed in section 667, subdivision (e)(2)(C)(iii), and section 1170.12, subdivision (c)(2)(C)(iii).[6]  Here, as the parties correctly acknowledge, only the second

---

[6]  Section 667, subdivision (e)(2)(C)(iii) provides: "[(e)(2)](C)  If a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7 that have been pled and proved, and the current offense is not a serious or violent felony as defined in subdivision (d), the defendant shall be sentenced [as a second strike offender] pursuant to paragraph (1) of subdivision (e) unless the prosecution pleads and proves any of the following:  [¶] . . . [¶] (iii) *During the commission of the current offense, the defendant . . . intended to cause great bodily injury to another person.*"  (Italics added.)

*[footnote continued on next page]*

10

resentencing eligibility criterion set forth in section 1170.126, subdivision (e)(2), is at issue in this appeal.[7] Under the plain language of the intended-to-cause-great-bodily-injury exclusion, defendant is ineligible for resentencing relief as a second strike offender if his life sentence was "imposed" because "[d]uring the commission of the current offense [he] intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii) & 1170.12, subd. (c)(2)(C)(iii), both cross-referenced in § 1170.126, subd. (e)(2).)

C.      *"Intended to Cause Great Bodily Injury"*

The Penal Code defines "'great bodily injury'" to mean "a significant or substantial physical injury." (§ 12022.7, subd. (f) [three-year sentence enhancement for persons who intentionally and personally inflict great bodily injury while committing or attempting to commit felony, § 12022.7, subd. (a)]; see also § 12022.8.) Case law has

---

[footnote continued from previous page]
        Section 1170.12, subdivision (c)(2)(C)(iii), provides: "[(c)(2)](C) If a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7 that have been pled and proved, and the current offense is not a felony described in paragraph (1) of subdivision (b) of this section, the defendant shall be sentenced [as a second strike offender] pursuant to paragraph (1) of subdivision (c) of this section, unless the prosecution pleads and proves any of the following: [¶] . . . [¶] (iii) *During the commission of the current offense, the defendant . . . intended to cause great bodily injury to another person*" (Italics added.)

        [7] The first resentencing eligibility criterion set forth in section 1170.126, subdivision (e)(1), is met because defendant is serving an indeterminate life sentence for crimes that (as noted, *ante* ) are not serious or violent felonies. Neither party raises any issue regarding the third criterion set forth in section 1170.126, subdivision (e)(3), and, thus, we shall not discuss it further.

11

also consistently defined "[g]reat bodily injury" as "bodily injury which is significant or substantial, not insignificant, trivial or moderate. [Citations.]" (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066; see also *People v. Cross* (2008) 45 Cal.4th 58, 63-64; *People v. Escobar* (1992) 3 Cal.4th 740, 749-750; *People v. Miller* (1977) 18 Cal.3d 873, 883 [construing great bodily injury in former §§ 213 & 461 to mean "significant or substantial bodily injury or damage as distinguished from trivial or insignificant injury or moderate harm"].)

The Supreme Court described great bodily injury as "substantial injury *beyond* that inherent in the offense." (*People v. Escobar*, *supra*, 3 Cal.4th at p. 746; see also *People v. Modiri* (2006) 39 Cal.4th 481, 492; *People v. Jefferson* (1999) 21 Cal.4th 86, 101.) However, to be significant or substantial, the injury need not be so grave as to cause the victim "'permanent,' 'prolonged' or 'protracted'" bodily damage. (*People v. Escobar*, at p. 750.) Proof that a victim's bodily injury is great is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat the injury. (*People v. Cross*, *supra*, 45 Cal.4th at p. 66; *People v. Harvey* (1992) 7 Cal.App.4th 823, 827-828.)

Based on case law and the plain meaning of the statute, "intend to cause" means a defendant must have the *specific intent* to cause great bodily injury. (See, e.g., *People v. Colantuono* (1994) 7 Cal.4th 206, 214; *People v. Gutierrez* (1994) 23 Cal.App.4th 1576, 1584-1585; § 459 [burglary statute; "enters . . . with intent to]; § 209 ["kidnaps . . . with intent to"]; § 206 [commits torture "with the intent to"]; § 220 [assault with intent to

12

commit rape].)  Hence, there are two requirements to the intended-to-cause-great-bodily-injury exclusion:  (1) the infliction of great bodily injury, and (2) the specific intent to cause great bodily injury to another person during the commission of the commitment offense.  "The intent of the perpetrator can be established not only by the circumstances of the offense, but also from other circumstantial evidence."  (*People v. Jung* (1999) 71 Cal.App.4th 1036, 1043, citing *People v. Raley* (1992) 2 Cal.4th 870, 888-889; *People v. Mincey* (1992) 2 Cal.4th 408, 433.)

Here, defendant was convicted of willfully and unlawfully inflicting corporal injury on a cohabitant resulting in a traumatic condition (§ 273.5, subd. (a)), and willfully and unlawfully committing an assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)).  The record of conviction clearly shows that defendant, during the commission of his current offenses, intended to cause great bodily injury to the victim.  Specifically, defendant slapped her with his open hand; he hit her in the face with his fist; he kicked her face; and repeatedly choked her until she could no longer breathe.  Defendant placed his hands on the victim's throat, pushed her trachea with his thumbs, and said, "'Bitch, I'll kill you.'"  He also forced her to the ground by her throat, pinned her to the floor against a toilet, and stated, "'I told you bitch, I'll kill you with no second thought about it.'"  Even after the victim left, defendant continued to attack her.  He followed her outside, yelling that she was a "bitch" and he could "smash" her.  She asked him to leave her alone, but he punched her jaw with a closed fist.  An officer testified that the victim had multiple bruises to her face, arms, and neck, and appeared very fearful.

13

Defendant's actions, defendant's statements, the manner in which the victim was assaulted and the injuries she sustained, show that defendant "intended to cause great bodily injury to another person" during the commission of his current offenses. Defendant therefore was ineligible for resentencing under the plain, ordinary meaning of section 667, subdivision (e)(2)(C)(iii).

Our conclusion that the record of defendant's conviction shows he is ineligible for resentencing relief is consistent with the purposes of the Reform Act. As noted, the Reform Act is intended to provide resentencing relief to low-risk, nonviolent inmates serving life sentences for petty crimes, such as shoplifting and simple drug possession. (Voter Information Guide, *supra*, text of Prop. 36, § 1, subds. (3), (4) & (5), p. 105.) Defendant's current offenses of assault by means of force likely to cause great bodily injury and corporal injury on a cohabitant resulting in a traumatic condition—when viewed in light of the fact that he intended to cause great bodily injury during the commission of those offenses—cannot be deemed a petty or minor crime for purposes of the Reform Act.

D.     *"Plead and Prove" Requirement*

The People argue that the resentencing provisions of section 1170.126 do not contain a pleading and proof requirement. Citing the "plead and prove" language contained in sections 667, subdivision (e)(2)(C), and 1170.12, subdivision (c)(2)(C) (discussed, *post*), defendant claims that the provisions of sections 1170.126, 667, subdivision (e)(2)(C), and 1170.12, subdivision (c)(2)(C), were enacted as "part of a

14

broader reformation of the Three Strikes Law that changed several statutes and did incorporate a pleading and proof requirement."

Section 667, subdivision (e)(2)(C), provides in pertinent part that, "[i]f a defendant has two or more prior serious and/or violent felony convictions . . . and the current offense is not a serious or violent felony . . . *the defendant shall be sentenced*" as a second strike offender "unless the prosecution *pleads and proves*" any of the four enumerated exceptions or exclusions set forth in clauses (i) through (iv) of section 667, subdivision (e)(2)(C).  (See *People v. Superior Court* (*Kaulick*) 215 Cal.App.4th 1279, 1293, italics added (*Kaulick*).)

Section 1170.12, subdivision (c)(2)(C), similarly provides that, "[i]f a defendant has two or more prior serious and/or violent felony convictions . . . and the current offense is not a [serious or violent] felony . . . *the defendant shall be sentenced*" as a second strike offender "unless the prosecution *pleads and proves*" any of the four enumerated exceptions or exclusions set forth in clauses (i) through (iv) of section 1170.12, subdivision (c)(2)(C).  (See *Kaulick*, *supra*, 215 Cal.App.4th at p. 1293, italics added.)

We reject defendant's contention that the pleading and proof requirement set forth in both section 667, subdivision (e)(2)(C), and section 1170.12, subdivision (c)(2)(C), is incorporated into section 1170.126.  Defendant's reliance on the plead-and-prove language is unavailing.

15

Defendant's exact arguments were recently rejected by our colleagues in *People v. White* (2014) 223 Cal.App.4th 512, 523-524 (*White*) (review den. Apr. 30, 2014, S217030 [Fourth Dist., Div. One].) *White* deemed it appropriate for the court to look beyond the crime for which defendant had been sentenced to determine whether the "armed-with-a-firearm" exception to resentencing applied. (*Id*. at p. 523.) There, the defendant had been convicted and sentenced as a felon in possession of a firearm. The court recognized that "possession of a firearm does not necessarily require that the possessor be armed with it" (*id*. at p. 524), but affirmed the denial of resentencing because "the record of conviction establishes that the applicable resentencing eligibility criterion set forth in section 1170.126[, subdivision] (e)(2) is not satisfied, and, thus, [the defendant] is ineligible for resentencing relief." (*Ibid*.)

As *White* noted, "Although section 1170.126[, subdivision] (e)(2) expressly cross-references '. . . clauses (i) to (iii), inclusive' of sections 667[, subdivision] (e)(2)(C) and 1170.12[, subdivision] (c)(2)(C), nothing in the language of section 1170.126[, subdivision] (e)(2) or of any of the other subdivisions of section 1170.126 governing an inmate's petition for resentencing relief under the Reform Act references the plead-and-prove language." (*White*, *supra*, 223 Cal.App.4th at pp. 526-527.)

Defendant's reference to "the pleading and proof requirement plainly is a part of only the *prospective* part of the Reform Act, which governs the *sentencing of a defendant* with 'two or more prior serious and/or violent felony convictions' who has suffered a third felony conviction; it is *not* a part of section 1170.126, the *retrospective* part of the

16

Reform Act that governs a petition for resentencing brought by an *inmate* already serving a life sentence under the Three Strikes law." (*White*, *supra*, 223 Cal.App.4th at p. 527, italics in original.)  The court in *Kaulick* explained:  "[T]here are two parts to the [Reform] Act:  the first part is *prospective* only, reducing the sentence to be imposed in future three strike cases where the third strike is not a serious or violent felony (Pen. Code, §§ 667, 1170.12); the second part is *retrospective*, providing *similar*, but *not identical*, relief for prisoners already serving third strike sentences in cases where the third strike was not a serious or violent felony (Pen. Code, § 1170.126)." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1292.)  The *Kaulick* court further explained that, "under the prospective part of the [Reform] Act, if the defendant's current third strike offense is not serious or violent, and none of four enumerated exceptions applies, the defendant 'shall be' sentenced as if the defendant had only a single prior strike.  [Citations.]" (*Id.* at p. 1293.)

We also reject defendant's assertion that using a disqualifying factor not pled and proved to the jury would violate his constitutional rights to due process and a jury trial under *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its progeny. Defendant maintains that he was entitled to a jury trial to determine whether he intended to cause great bodily injury.

*Apprendi* states that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, 530 U.S.

17

at p. 490.) Subsequently, in *Blakely v. Washington* (2004) 542 U.S. 296, the high court clarified that the "'statutory maximum'" for purposes of the right to a jury trial is not necessarily the maximum penalty provided by statute for the crime; rather, it is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (*Id*. at p. 303, italics omitted.) And in *Alleyne v. United States* (2013) __ U.S. __ [133 S.Ct. 2151, 186 L.Ed.2d 314] the same court declared a fact that increases the mandatory minimum sentence must likewise be submitted to a jury, and proved beyond a reasonable doubt. (133 S.Ct. at p. 2155, 186 L.Ed.2d at p. 321.) Thereafter, the high court in *Cunningham v. California* (2007) 549 U.S. 270, explained that, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Id*. at p. 281.) Defendant's reliance on these cases is based upon a contention that because the finding that defendant intended to cause great bodily injury increased the mandatory minimum term of the resentencing provision from a two-strikes sentence to a three-strikes sentence, he was entitled to have a jury determine whether he intended to cause great bodily injury.

Defendant misapplies *Apprendi* and its progeny to resentencing petitions under section 1170.126. The determinations required under section 1170.126 are not factors justifying enhancing a defendant's sentence beyond the statutory maximum. (See *Kaulick*, *supra*, 215 Cal.App.4th at pp. 1302-1304.) "The retrospective part of the

[Reform] Act is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners. Instead, it provides for a proceeding where the original sentence may be modified downward. Any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues. Thus, there is no constitutional requirement that the facts be established beyond a reasonable doubt." (*Id.* at pp. 1304-1305; citing *Dillon v. United States* (2010) 560 U.S. 817, 829.)

The failure of the applicability of these cases here lies in the difference between a proceeding which would *increase* a sentence and one which would *decrease* the sentence. The resentencing provisions under section 1170.126 are akin to a hearing regarding "downward sentence modifications due to intervening laws" (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1304; see also *Dillion*, *supra*, 560 U.S. at p. 829), and therefore *Apprendi* and the limitations of the Sixth Amendment do not apply to resentencing determinations.

Accordingly, we find that the trial court, when determining defendant's eligibility to be resentenced under the Reform Act, erred in finding that it was limited to "what the jury [had] convicted [defendant] of." We note that this court's unpublished opinion in defendant's prior underlying appeal affirming his current convictions is sufficient evidence of the record of conviction in determining a defendant's eligibility under the Reform Act. In *People v. Woodell* (1998) 17 Cal.4th 448, our Supreme Court held that the record of a prior conviction incorporated both the trial and appellate court record,

19

including the appellate opinion. (*Id*. at p. 458.) In so holding, the *Woodell* court noted that "the appellate opinion itself, representing the action of a court, clearly comes within the exception to the hearsay rule for official records" (*ibid*.) and that it is "a judicial statement and can help determine the nature of the crime of which the defendant had been convicted." (*Id*. at p. 459.)

Moreover, section 1170.126, subdivision (g), states that in exercising its discretion in determining whether defendant satisfies the criteria in subdivision (e) of section 1170.126 or poses an unreasonable risk of danger to public safety, a trial court may consider "(1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."

In sum, we conclude that, where the record of conviction establishes a defendant intended to cause great bodily injury to another person during the commission of his or her commitment offense, the intended-to-cause-great-bodily-injury exclusion applies and, thus, a defendant is not entitled to resentencing relief under the Reform Act. We also hold that, in such a case, a trial court may deny section 1170.126 resentencing relief under the intended-to-cause-great-bodily-injury exclusion even if the accusatory pleading

did not allege he or she intended to cause great bodily injury during the commission of the offense.

Accordingly, we will reverse the order granting defendant's petition for a recall of his life sentence and for resentencing as a second strike offender under the Reform Act.

III

DISPOSITION

The order granting defendant's petition for a recall of his life sentence and for resentencing as a second strike offender under the Reform Act is reversed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

KING
J.

MILLER
J.

21